The STATE of Ohio, Appellee,

v.

MOORE, Appellant.

[Cite as *State v. Moore* (1994), 99 Ohio App.3d 748.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930778.

Decided Dec. 14, 1994.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Christian J. Schaefer,* Assistant Prosecuting Attorney, for appellee.

*Edward O. Keller,* for appellant.

MARIANNA BROWN BETTMAN, Judge.

In September 1990, Douglas E. Moore, petitioner, pleaded guilty to attempted rape. In his Crim.R. 11 colloquy with the trial court, Moore stated that he made his guilty plea of his own free will and that he understood that the court was free to pass the maximum sentence for the crime. The trial court accepted the plea and entered a judgment of conviction against him. At sentencing, the trial court imposed a minimum of eight and a maximum of fifteen years' incarceration.

On August 16, 1993, Moore filed a petition for postconviction relief under R.C. 2953.21. In that petition, he claimed that his attorney had promised him that if he pleaded guilty to the offense, he would be placed on probation. In support of that allegation, Moore submitted affidavits by his mother, brother, and sister. The court, nonetheless, denied the petitioner's request for a hearing and dismissed his petition. From that order, Moore brings this appeal.[1]

In his single assignment of error, Moore contends that the trial court erred when it dismissed his petition without a hearing. The Ohio postconviction statute states that the court must grant an evidentiary hearing, unless it determines that there are no substantive grounds for relief. R.C. 2953.21(C) and (E). To determine whether there are substantive grounds for relief, the court must consider the petition, affidavits, files and records of the original proceedings, the record of the clerk of court, and the court reporter's transcript. R.C. 2953.21(C).

The court's decision on whether to grant a hearing may turn on the contents of affidavits submitted with the petition. For instance, in one case, the petitioner submitted his own signed statement in which he claimed that his attorney promised him that he would receive a lesser sentence if he pleaded guilty. *State v. Kapper* (1983), 5 Ohio St.3d 36, 37–38, 5 OBR 94, 95, 448 N.E.2d 823, 826. A condition of Kapper's arrangement was that, during his Crim.R. 11 colloquy, he was to state that he had received no promises of leniency. *Id.* The Ohio Supreme Court held that the petitioner's own self-serving declarations were insufficient to rebut the record showing that his plea was voluntary. *Id.* at 38, 5 OBR at 95, 448 N.E.2d at 826. By contrast, the court noted a "letter or affidavit from the court, prosecutors or defense counsel alleging a defect in the plea process" might be sufficient to warrant a hearing. *Id.*

The issue in this case, then, is whether the affidavits by Moore's mother, brother, and sister are "self-serving declarations," as in *Kapper*, or whether they are sufficient to warrant a hearing under R.C. 2953.21(C). The question stated more generally is whether the trial court may determine issues of credibility and weight based on affidavits when it decides whether to grant an evidentiary

---

1. We have *sua sponte* removed this cause from the accelerated calendar.

hearing. Courts in Ohio have reached conflicting results regarding this issue. See, generally, *State v. Strutton* (1988), 62 Ohio App.3d 248, 575 N.E.2d 466 (hearing) (but, see, dissenting opinion); *State v. Pecina* (Jan. 14, 1994), Ottawa App. No. 93OTO25, unreported, 1994 WL 11042 (hearing); *State v. Davis* (Sept. 30, 1991), Wood App. No. 91WD002, unreported (no hearing); *State v. Brewer* (June 2, 1989), Portage App. No. 1912, unreported, 1989 WL 59036 (no hearing). For the reasons that follow, we affirm the judgment of the trial court that a hearing was not required before the petition was dismissed.

### A. *May the Trial Court Weigh Issues of Credibility When it Dismisses a Postconviction Petition?*

A postconviction proceeding is not an appeal of a criminal conviction, but a collateral civil attack on a criminal judgment. *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67, 76. It bears emphasis that state postconviction review is not a constitutional right. *Id.* The states are free to adopt their own postconviction procedures. *Young v. Ragen* (1949), 337 U.S. 235, 237, 69 S.Ct. 1073, 1074, 93 L.Ed. 1333, 1335. Thus, in a postconviction proceeding, the convicted defendant has only the rights granted by the legislature. See, *e.g.*, *State v. Crowder* (1991), 60 Ohio St.3d 151, 573 N.E.2d 652, paragraph one of the syllabus (legislature intended state to provide counsel to indigent when petition has arguable merit); *Dayton v. Hill* (1970), 21 Ohio St.2d 125, 127–128, 50 O.O.2d 328, 330, 256 N.E.2d 194, 196 (legislature did not intend post-conviction for municipal ordinances).

As in all cases of statutory interpretation, the polestar of analysis is the determination of actual legislative intent. *Henry v. Cent. Natl. Bank* (1968), 16 Ohio St.2d 16, 20, 45 O.O.2d 262, 265, 242 N.E.2d 342, 345. The initial repository of legislative intent is the language of the statute. *Id.* Every word in a statute is designed to have some legal effect. R.C. 1.47(B). The statute in question here, R.C. 2953.21(C), states that the trial court may dismiss a petition without granting an evidentiary hearing if it determines that there are no substantive grounds for relief. If the court dismisses a petition under those circumstances, the legislature has ordered that "it shall make and file findings of fact and conclusions of law with respect to such dismissal." *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph one of the syllabus; R.C. 2953.21(C).

Findings of fact generally include decisions regarding weight and credibility of witnesses. See, *e.g.*, *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Therefore, if this finding-of-fact language is to be given effect, it follows that the legislature must have intended to grant the court power to evaluate the credibility and weight of

affidavits. The traditional factfinding role of the trial court, however, is based on its ability to observe the demeanor, gestures, and voice inflection of witnesses who testify. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. For example, if summary judgment is sought under Civ.R. 56, it would be improper for the court to grant summary judgment on the basis of the credibility of affidavits. See, *e.g.*, *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 88, 585 N.E.2d 384, 389. The traditional policy for granting the trial court a factfinding role runs counter to the notion of granting factfinding authority without observing live testimony. That conflict, therefore, creates an ambiguity as to legislative intent.

When a statute is ambiguous, the court may look at former statutory provisions to determine the intent of the legislature. R.C. 1.49(D). In the original postconviction statute, the Ohio legislature granted the court broad power to determine issues of weight and credibility without the benefit of live testimony. As the statute first was adopted, the court could deny a hearing based on the petition, files, and records, without considering petitioner's affidavits or depositions. Am.S.B. No. 383, 131 Ohio Laws 684, 684–685 (prior version of R.C. 2953.21 and 2953.22). Furthermore, even if the court ordered a hearing, the legislature permitted it to proceed without the petitioner. Am.S.B. No. 383, 131 Ohio Laws 684, 685 (prior version of R.C. 2953.22). If the court allowed the petitioner to attend the hearing, the court also was permitted to consider the testimony of all witnesses in the form of depositions. Am.S.B. No. 383, 131 Ohio Laws 684, 685 (prior version of R.C. 2953.22). After the hearing, with or without live testimony, the court was ordered to make findings of fact and decide the merits of the petition. Am.S.B. No. 383, 131 Ohio Laws 684 (prior version of R.C. 2953.21).

In view of the legislature's original intent to allow the trial court to dispose of postconviction petitions without the benefit of live testimony, it is helpful to analyze subsequent developments in the law and changes in the Rules of Criminal Procedure to determine the court's current power to dismiss without a hearing. In 1975, ten years after the postconviction statute first was enacted, the Ohio Supreme Court held that the trial court must grant a hearing if the petitioner's allegations raised questions of fact that could not be resolved without an evidentiary hearing. *State v. Milanovich* (1975), 42 Ohio St.2d 46, 50, 71 O.O.2d 26, 29, 325 N.E.2d 540, 543. One year after *Milanovich,* the court enacted Crim.R. 11. Pursuant to Crim.R. 11, when a person who was facing prosecution decided to plead guilty, the court was required to engage in a colloquy with the defendant. The purpose of the colloquy was to determine if the defendant was making the plea intelligently and voluntarily. *State v. Nero* (1990), 56 Ohio St.3d 106, 107, 564 N.E.2d 474, 475–476.

After Crim.R. 11 was enacted, the court reversed its holding in *Milanovich* and allowed the trial court to dismiss a post-conviction petition without a hearing, even when accompanying documents raised questions of fact. *Kapper,* 5 Ohio St.3d at 38, 5 OBR at 95, 448 N.E.2d at 826. When a petitioner's affidavit stated, in contrast to the Crim.R. 11 colloquy, that his guilty plea was not voluntary, the "record reflecting compliance with Crim.R. 11 has *greater probative value*" than the affidavit. (Emphasis added.) *Id.*

Therefore, the current language of the postconviction statute, prior versions of the procedure, and Ohio Supreme Court interpretations of the statute indicate that the legislature intended for the trial court to weigh issues of credibility without granting a hearing. The question is, therefore, how broad did the legislature intend the factfinding power to be?

### B. *How May the Court Determine Credibility of Affidavits?*

█ When a state statute is modeled on parallel federal statutes, judicial interpretations of those federal provisions may be considered as persuasive authority in determining the meaning of comparable Ohio laws. *In re Estate of Morgan* (1981), 65 Ohio St.2d 101, 103, 19 O.O.3d 301, 303, 419 N.E.2d 2, 4. Federal habeas corpus decisions are instructive in answering the question left open in *Kapper,* namely, whether affidavits that are not from the court, prosecutor, or defense counsel may be sufficient to warrant a hearing. The modern scheme of postconviction statutes was created after the United States Supreme Court, in two decisions, encouraged states to enact procedures to allow prisoners to obtain state review of federal constitutional violations. *Young,* 337 U.S. at 238–239, 69 S.Ct. at 1074–1075, 93 L.Ed. at 1336; *Case v. Nebraska* (1965), 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422. The court based its encouragement on the "tremendous increase in habeas corpus applications in the federal courts." *Case,* 381 U.S. at 338, 85 S.Ct. at 1488, 14 L.Ed.2d at 424. The original version of the Ohio statute specifically was enacted in response to the concerns raised in *Case* and *Young. Dayton v. Hill,* 21 Ohio St.2d at 127, 50 O.O.2d at 330, 256 N.E.2d at 195 (Ohio response).

The coordination between the federal and state procedures is illustrated by the fact that a petitioner must exhaust all state postconviction remedies before applying for federal habeas corpus relief. *Young,* 337 U.S. at 238–239, 69 S.Ct. at 1074–1075, 93 L.Ed. at 1336; *Armstrong v. Haskins* (C.A.6, 1966), 363 F.2d 429. In addition, factual findings made in state postconviction hearings are presumed to be correct in federal habeas corpus proceedings, unless a specified statutory condition is found to exist. Section 2254(d), Title 28, U.S.Code. One of those conditions is that the state proceeding was not "adequate to afford a full and fair hearing." Section 2254(d)(2), Title 28, U.S.Code. In such a case, the federal

courts will grant a habeas evidentiary hearing to redetermine factual issues. This federal background, therefore, is helpful in providing standards to guide state trial courts in their decisions on whether a live hearing is necessary to discharge their factfinding duties in a postconviction proceeding.

The United States Supreme Court has held that in state appellate review, factfinding based on a record review can be adequate to afford a full and fair hearing within the meaning of Section 2254(d), Title 28, U.S.Code. *Sumner v. Mata* (1981), 449 U.S. 539, 545–546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722, 730. Federal circuit courts additionally have held that findings of fact by state trial courts may benefit from the presumption of correctness even when they have determined credibility based solely on a paper hearing.

The Fifth Circuit Court of Appeals in particular has developed standards for "paper hearings." For instance, in one case a petitioner submitted an affidavit by one of his trial attorneys, who made an allegation of juror misconduct. *Buxton v. Lynaugh* (C.A.5, 1989), 879 F.2d 140, 142. Another of petitioner's trial attorneys, however, submitted a conflicting affidavit. *Id.* The Fifth Circuit Court of Appeals held that the trial court correctly denied a postconviction hearing because the same judge presided at both the trial and the postconviction proceeding. The court reasoned that the trial judge was in the best position to assess the credibility of the affidavits. *Id.* at 146.

Other factors that the court may consider in denying a live hearing are whether it appears from the face of the affidavit that it was prepared by a person other than the affiant or whether the affiants are relatives of the petitioner. *Sawyers v. Collins* (C.A.5, 1993), 986 F.2d 1493, 1505. Similarly, when the affidavits are identical and rely on hearsay, the court may determine that they are not credible. *Id.;* see, also, *May v. Collins* (C.A.5, 1992), 955 F.2d 299, 315; *McCann v. Armontrout* (C.A.8, 1992), 973 F.2d 655.

By contrast, in a case in which the Fifth Circuit held that a hearing was required, a petitioner raised a claim that the trial court was biased against him. *Nethery v. Collins* (C.A.5, 1993), 993 F.2d 1154, 1157, fn. 8. The petition claimed that the judge had a close personal relationship with the victim of a crime. The petitioner presented an affidavit of a person who allegedly heard prejudiced statements by the trial judge. *Id.* at 1157. The trial judge, in turn, submitted an affidavit stating that he was not acquainted with the victim. *Id.*

The Fifth Circuit noted that the postconviction judge did not preside at trial; therefore, there was no meaningful opportunity for the court in postconviction to access the credibility of the conflicting affiants. *Id.* at 1157, fn. 8. In addition, the trial transcript and independent newspaper accounts corroborated the affidavits by showing the emotional outbursts of the trial judge. Therefore, a hearing without live testimony was not sufficient, and the findings of fact in the state

proceedings, under the circumstances, were not entitled to a presumption of correctness. *Id.*

## C. *Credibility of Moore's Affidavits*

■ Here, all three of Moore's affidavits give verbatim accounts of the sequence of events involving the attorney's promise of probation. See Appendix A, B, and C. The three affidavits were signed by relatives of the petitioner. They seemingly were prepared by the same person. The three affidavits also rely on the hearsay declaration of the attorney: "Mr. Bolce said that he could get a plea bargain where my [son] [brother] Douglas would not have to go to jail." Similarly, the affidavits swear in triplicate, "When they were escorting him away, I asked Mr. Bolce what happened to the deal." Finally there is nothing in the record or the petition to corroborate the affiants' stories.

On the other hand, the record indicates the following colloquy:

"THE COURT: Is your plea made of your own free will?

"THE DEFENDANT: Yes, sir.

" * * *

"THE COURT: The only thing left for me is to pass the sentence. And the possible sentence for this kind of charge is a minimum of three years, four, five, six, seven or eight to fifteen years in a reformatory or penitentiary and a fine of up to $6,500. Do you understand?

"THE DEFENDANT: Yes, sir."

Applying the standards drawn from the federal cases cited herein, we note not only that the affidavits conflict with the petitioner's prior statements, given both orally and in a signed writing at the time he entered his guilty plea in open court, but also that the same judge presided at the plea hearing and at the postconviction proceeding. Therefore, the judge was able to observe the defendant and his attorney and ascertain the credibility of the defendant's original statements. The petition and the affidavits have the effect of asking the judge now to believe that the defendant's prior statements were false. The Ohio Supreme Court has held as syllabus law that "[r]ecanting testimony ordinarily is unreliable and should be subjected to closest scrutiny." *Taylor v. Ross* (1948), 150 Ohio St. 448, 38 O.O. 314, 83 N.E.2d 222, paragraph three of the syllabus.

All of these factors must be considered in determining whether the trial court in this case was required to hold an evidentiary hearing. First, the same judge presided at both proceedings. In addition, regarding the affidavits, they were identical, signed by relatives, seemingly prepared by the same person, based on hearsay, and had the effect of recanting prior statements. Therefore, here, just as in *Kapper*, a record reflecting compliance with Crim.R. 11 has greater

probative value than the contradictory affidavits. As a consequence, the trial court did not err by dismissing the petition without an evidentiary hearing. Moore's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

HILDEBRANDT, P.J., and KLUSMEIER, J., concur.